IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


G.V.R., by and through his parents and next friends,
M.V.R. and S.R.,

     Plaintiff,

v.                                       CIV 18-0324 KBM/SCY

THE ESPAÑOLA PUBLIC SCHOOLS;
PETER ENGLER, in his individual capacity;
ANDREW VALDEZ, aka JOHN ANDREW VALDEZ,
In his individual capacity,

     Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Andrew Valdez's Motion to Dismiss and for Qualified Immunity, filed on May 14, 2018 (*Doc. 16*), Defendants Board of Education of the Española Public School District and Peter Engler's Motion to Dismiss and for Qualified Immunity, filed on April 13, 2018 (*Doc. 6*), Plaintiff's requests for limited discovery, to convert the motion to dismiss to one for summary judgment, and to amend his complaint, filed on May 11, 2018, as part of his Response *(Doc. 15)* to the School Defendants' motion to dismiss, and Plaintiff's Opposed Motion to Dismiss Counts III and IV, filed on June 15, 2018 (*Doc. 33*). Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 10-13*.

Having considered the record, submissions of counsel, and relevant law, the Court finds Defendant Valdez's motion to dismiss (*Doc. 16*) should be denied,

Defendants Española Public School District and Peter Engler's motion to dismiss (*Doc. 6*) should be granted in part, Plaintiff's requests for discovery, to convert his response to a motion for summary judgment, and to amend his complaint (*Doc. 15*) should be denied, and Plaintiff's motion to dismiss (*Doc. 33*) should be denied.

## I.     Procedural Background

This case arises from alleged physical abuse that G.V.R. ("Plaintiff"), a minor child, suffered at the hands of Defendant Valdez, who was employed as a music teacher at Plaintiff's elementary school. Plaintiff alleges that Defendant Valdez violated his substantive due process rights, and that Defendants Board of Education of the Española Public School District ("EPSD" or "Board") and Engler (collectively, the "School Defendants") failed to adequately screen, train, and supervise Defendant Valdez, which led to Plaintiff's injuries and deprivations of his constitutional and statutory rights.

Plaintiff filed his original complaint in the First Judicial District Court, State of New Mexico, County of Rio Arriba, on November 16, 2017. *See Doc. 1-A.* Plaintiff filed a First Amended Complaint on January 12, 2018. *See Doc. 1-B, First Amended Complaint* ("*FAC*"). The School Defendants properly removed the case to this Court on April 6, 2018. *See Doc. 1.*

Plaintiff alleges the following counts against the Defendants: (1) in Counts I-III, Plaintiff alleges that all three Defendants violated his Fourteenth Amendment right to substantive due process under 42 U.S.C. § 1983; (2) in Count IV, Plaintiff alleges that EPSD violated his rights under Title IX, 20 U.S.C. §§ 1681-88; and (3) in Count V,

Plaintiff alleges that Defendants EPSD and Engler violated his rights under the New Mexico Tort Claims Act ("NMTCA"), N.M. Stat. Ann. 1978 § 41-4-6. *See FAC* ¶¶ 132-78.

## II. Plaintiff's Allegations in the First Amended Complaint

<u>The November 18, 2015 Incident</u>

In the fall of 2015, Plaintiff was a third grade student at Troy E. Quintana "Sombrillo" Elementary School ("Sombrillo Elementary"). *FAC* ¶¶ 4, 45. On November 18, 2015, Plaintiff and his classmates attended Defendant Valdez's music class. *Id.* ¶ 47. During class, Plaintiff put his feet on a chair to show off his new shoes. *Id.* ¶¶ 48-49. "Defendant Valdez yelled at [Plaintiff] to put his 'fucking feet down.'" *Id.* ¶ 50. Plaintiff complied, but later put his feet back on the chair. *Id.* ¶ 51. Defendant Valdez yelled, "I fucking told you to take your feet off the chair." *Id.* ¶ 52. Defendant Valdez then "picked up the chair [Plaintiff] had his feet on and slammed it down on the floor. [He] then punched [Plaintiff] in his right shoulder three times with a closed fist." *Id.* ¶¶ 53-54. Defendant Valdez kicked a second student in the shin, pulled a third student to the ground by the hair, and shouted at the class "that they were 'stupid' and to 'shut up,' as well as yelled profanity at the students." *Id.* ¶¶ 55-56.

Plaintiff's regular teacher, Ms. Valencia, eventually came to retrieve her students from the music classroom. *Id.* ¶ 58. "Ms. Valencia told the class that Defendant Valdez said that they were very bad and [he] did not want any of them to return to his classroom." *Id.* ¶ 59. Plaintiff then told Ms. Valencia what Mr. Valdez did. *Id.* ¶ 60. Ms. Valencia reported the incident to Defendant Engler, the principal of Sombrillo Elementary, and asked if she should contact the students' parents. *Id.* ¶¶ 4, 61, 63.

Defendant Engler advised Ms. Valencia that he would take care of the situation, and she was not to contact parents. *Id.* ¶¶ 62-63.

Later that afternoon, Defendant Valdez reported to Defendant Engler "and told him that he had 'lost it' and had 'lost control' of the class. He also stated that he wished to drop that class." *Id.* ¶ 64. Defendant Engler did not contact the police or Plaintiff's parents on November 18, 2015. *Id.* ¶¶ 65-66.

When Plaintiff got home from school that day, "his older sister saw that he had blood on his clothes and that he had soiled himself. [He] also began throwing up." *Id.* ¶ 67. When his parents arrived home that night, they took Plaintiff to the hospital because he "was acting strangely and was unable to walk." *Id.* ¶ 70. "The hospital treated [him] for his shoulder pain" and diagnosed him "with vertigo from the stress he had endured that day." *Id.* ¶ 71. "The physician also [said] that the encopresis and enuresis were . . . due to stress." *Id.* ¶ 72. "Hospital staff contacted police and State Police Patrolman Mario Herrera arrived at the hospital and took a report." *Id.* ¶ 73.

"On November 19, 2015, Defendant Engler collected written statements from each of the children from [Plaintiff's] class, including the three children"[1] allegedly battered by Defendant Valdez. *Id.* ¶ 75. Also on November 19, 2015, Plaintiff's parents and Patrolman Herrera met with Defendant Engler of their own accord – Defendant Engler had not contacted them. *Id.* ¶¶ 78-79. "Defendant Engler stated that [the school] had not contacted the parents of the students assaulted by Defendant Valdez because he had wanted to investigate first, there was a lot going on, and he did not have time to

---

[1] It is unclear whether Defendant Engler obtained a statement from Plaintiff – one of the three students Defendant Valdez battered – on November 19, 2015. *See* FAC ¶ 75.

contact them." *Id.* ¶ 80. "Defendant Engler confirmed that [Plaintiff's] story was true and relayed the confirming statements of the other students." *Id.* ¶ 81.

When EPSD's Human Resources Director interviewed him, Defendant Valdez admitted to grabbing the chair Plaintiff had his feet on and setting it down "hard," "slapping" Plaintiff with the back of his hand, and yelling at students. *Id.* ¶¶ 83-86. EPSD terminated Defendant Valdez's employment on November 23, 2015. *Id.* ¶ 89. The New Mexico Public Education Department ("PED") and Defendant Valdez later "agreed to a suspension of his teaching license for two years, which was deferred on" certain agreed conditions. *Id.* ¶ 90. As part of the agreement, Defendant Valdez admitted that "he engaged in inappropriate contact with three students and used inflammatory and derogatory language with students . . . ." *Id.* ¶ 91 (quotation marks omitted).

Defendant Valdez was also criminally indicted for three counts of child abuse in violation of N.M. Stat. Ann. 1978 § 30-6-1D(2) for his actions on November 18, 2015. *Id.* ¶ 92. Defendant Valdez ultimately pleaded guilty to three counts of battery and received a sentence of six months of jail for each count, which the court suspended on the condition of 18 months of supervised probation. *Id.* ¶¶ 94, 96.

Plaintiff continued to suffer physical and emotional effects from the physical assault, including pain and numbness, bruising, feeling his shoulder "pop" in and out of place, decreased mobility, torn tendons in his shoulder, problems sleeping, sleep-walking, continued episodes of enuresis and encopresis, a diagnosis of post-traumatic stress disorder ("PTSD"), and a fear of school. *Id.* ¶¶ 97-118. Plaintiff was homeschooled for a time because of his fear of school and later switched to another school because he did not want to attend school in Española. *Id.* ¶¶ 105, 107. Plaintiff

also attended physical therapy due to the problems with his shoulder, as well as counseling for his emotional trauma. *Id.* ¶¶ 99, 119.

<u>Defendant Valdez's Background</u>

Prior to 2015, Defendant Valdez had at least three brushes with law enforcement for criminal conduct. First, in 2008, the New Mexico State Police investigated Defendant Valdez for criminal sexual contact. *Id.* ¶ 12. According to Plaintiff's retelling of the police report, Defendant Valdez went to a woman's residence to pick up wood she was giving away. *Id.* ¶ 13. Although the woman "told him she did not wish to have sex," Defendant Valdez allegedly "pull[ed] up her shirt[,] pulled down her bra[,]" and "ran his hand up her thigh." *Id.* ¶¶ 14-15. "Defendant Valdez told police their contact was consensual and he left because she had lied about her age. No charges were ultimately filed against Defendant Valdez for these allegations." *Id.* ¶¶ 17-18.

In 2011, the New Mexico State Police investigated Defendant Valdez after his four-year-old granddaughter told her mother (and later a Safehouse interviewer) that he had touched her vaginal area. *Id.* ¶¶ 19-20. No charges were ever filed against Defendant Valdez based upon this report. *Id.* ¶ 21. EPSD employed Defendant Valdez in 2011 as a music teacher. *Id.* ¶ 22.

"In 2012, Defendant Valdez was arrested and charged with" three crimes: battery; resisting, evading, or obstructing an officer; and use of telephone to harass. *Id.* ¶ 23. It was alleged that on September 23, 2012, Defendant Valdez entered a Mini Mart, grabbed one cashier's groin area, and touched a second cashier's breast. *Id.* ¶¶ 24-25. He later allegedly called one of the cashiers and made inappropriate, harassing statements. *Id.* ¶ 26. Defendant Valdez then resisted orders from officers who went to

his residence. *Id.* ¶ 27. All charges related to this incident were dismissed in 2013, after Valdez entered into an agreement for a conditional discharge with supervised probation. *Id.* ¶¶ 28-29. EPSD hired Defendant Valdez sometime after this incident to teach music at Sombrillo Elementary.[2] *Id.* ¶ 31.

In 2014, Defendant Valdez allegedly "physically battered a female student at Sombrillo Elementary . . . ." *Id.* ¶ 33. Plaintiff further alleges that about one month before the November 2015 incident at issue in this lawsuit, "Defendant Valdez physical battered Plaintiff . . . by pulling up his underwear." *Id.* ¶ 34.

<u>Sombrillo Elementary Staff and Policy</u>

A second Sombrillo Elementary teacher has also been charged with abuse of his students in the past: in 2012, teacher Jimmy Montoya was charged with criminal sexual contact of nine minor students at Sombrillo Elementary. *Id.* ¶ 37. "There is evidence that one of the students disclosed an instance of inappropriate contact to another teacher, who did not report it." *Id.* ¶ 38. Plaintiff alleges that EPSD hired Mr. Montoya "despite numerous prior allegations of sexual abuse or sexual harassment of students by him in Santa Rosa and Socorro, New Mexico, which resulted in the one-year suspension of his license in 1999." *Id.* ¶ 40.

Plaintiff also asserts that around the time of the incident at issue here, Sombrillo Elementary teachers "were behaving angrily towards their students by getting in their faces and screaming at them." *Id.* ¶ 43. Finally, Plaintiff alleges, "Defendant Engler had a policy . . . that teachers at Sombrillo Elementary School were not allowed to contact parents directly." *Id.* ¶ 42.

---

[2] It appears that Defendant Valdez has taught for EPSD on more than one occasion, but his employment dates are not clear. *See FAC* ¶¶ 22, 31.

## III.    Legal Standard

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (quotation omitted). "To survive a motion to dismiss," the complaint does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

## IV.    Analysis

### A.    The Court will not dismiss Plaintiff's claim against Defendant Valdez under 42 U.S.C. § 1983.

In Count I, Plaintiff brings a claim against Defendant Valdez pursuant to Section 1983 for violations of his substantive due process right to bodily integrity. *See FAC* ¶¶ 121-31. Plaintiff asserts that Defendant Valdez's actions on November 18, 2015, were egregious, outrageous, and shocking to the conscience. *Id.* ¶¶ 126, 128. Section 1983 of Title 42 "provides that a person acting under color of state law who 'subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

shall be liable to the party injured.'" *Scott v. Mid-Del Sch. Bd. of Educ.*, 724 F. App'x 650, 653 (10th Cir. 2018) (quoting 42 U.S.C. § 1983).

"An individual defendant sued under § 1983 'may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law.'" *Id.* (citing *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (ellipsis, internal quotation marks, and citation omitted), *cert. denied* (U.S. Mar. 5, 2018) (No. 17-1021)). To overcome a qualified immunity defense, "the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D.*, 868 F.3d at 1220 (quotation omitted). "To meet this heavy burden the 'plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation.'" *Scott*, 724 F. App'x at 653 (quoting *T.D.*, 868 F.3d at 1220 (internal citation omitted)). "Although there need not be a case directly on point, [a state actor] cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it." *Id.* (quoting *T.D.*, 868 F.3d at 1220 (internal quotation marks and citations omitted)).

### 1.	The Court will use the Fourteenth Amendment "shocks-the-conscience" standard to analyze Plaintiff's claim.

"The due process clause of the Fourteenth Amendment prohibits 'executive abuse of power . . . which shocks the conscience.'" *Muskrat v. Deer Creek Pub. Sch.*,

715 F.3d 775, 786-87 (10th Cir. 2013) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). The Tenth Circuit has held

> that a form of the shocks-the-conscience test applies to school-inflicted corporal punishment:
>
> [T]he substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.

*Id.* (quoting *Garcia v. Miera*, 817 F.2d 650, 655 (10th Cir. 1987) (internal quotation omitted)). Since *Garcia*, the Tenth Circuit has applied "this standard to all school discipline cases, not just those based on corporal punishment." *Id.* (citing *Harris v. Robinson*, 273 F.3d 927 (10th Cir. 2001) ("applying *Garcia* to a teacher who made a student unclog a toilet with his hands"); *Abeyta v. Chama Valley Indep. Sch. Dist. No. 19*, 77 F.3d 1253 (10th Cir. 1996) ("extending *Garcia* to verbal harassment inducing psychological harm, if sufficiently severe")).

Plaintiff argues that this standard is inappropriate for his case, as Defendant Valdez's conduct in punching Plaintiff was not "pedagogically oriented." *Doc. 22* at 4-8. Plaintiff advances the theory that Defendant Valdez's *initial* actions (yelling, cursing, slamming the chair on the floor) were "disciplinary in nature," while his later conduct (punching Plaintiff's shoulder) was no longer disciplinary. *Id.* at 6. Plaintiff cites *Gottlieb ex rel. Calabria v. Laurel Highlands School District*, 272 F.3d 168 (3d Cir. 2001), where the Third Circuit found that the first question to ask in analyzing the shocks-the-conscience standard in corporal punishment cases "is whether there was a pedagogical justification for [the school official's] use of force." *Gottlieb*, 272 F.3d at 173. Yet, the

*Gottlieb* Court did not ask this question in order to determine whether to use the shocks-the-conscience standard at all, but rather to parse the standard out into its separate elements. *See id.* (noting that "[t]o avoid conflating the various elements of the shocks the conscience test into a vague impressionistic standard, [a court must] analyze its four elements in turn").

The Tenth Circuit's decision in *Muskrat* is informative on this point. In *Muskrat*, a developmentally disabled child was subjected to excessive timeouts and three instances of physical abuse over the course of a five-year period. *Muskrat*, 715 F.3d at 780-81. The physical abuse included a teacher who "popped" the child on his cheek, another teacher's aide who slapped the child's arm, leaving a red mark, and an occasion where two teachers restrained the child by holding his shoulders so that he could not rise from his desk. *Id.* at 781. The child's parents filed suit, alleging violations of his substantive due process rights and of his rights under the Individuals with Disabilities Education Act (IDEA). *Id.* at 779-80. In analyzing the plaintiff's claim under the IDEA, the court opined that the three instances of physical abuse "appear to have resulted from simple frustration with [the child] *rather than any legitimate disciplinary goal*." *Id.* 785 (emphasis added). In analyzing the plaintiff's substantive due process claim, the court went on to find that the three instances of abuse – none of which had a "legitimate disciplinary goal" – simply did "not rise to the level of a constitutional tort" because they did not shock the conscience. *Id.* at 787. The *Muskrat* court specifically noted that without any lasting harm or evidence of malice, it could not conclude that the physical contacts constituted a "brutal and inhumane abuse of official power." *Id.*

A 2002 case from this District also leads the Court to conclude that the shocks-the-conscience standard is appropriate here. *Gonzales v. Passino*, 222 F. Supp. 2d 1277 (D.N.M. 2002), also "involve[d] a situation in which a teacher spontaneously used physical force against a student, with little or no provocation." *Id.* at 1280. There, the plaintiff, a middle school student, called another student a "faggot." *Id.* at 1278, 1279. A teacher heard the exchange and thought the plaintiff was addressing him (the teacher). *Id.* at 1279. The teacher asked the plaintiff what he had said, then "'hit' (the level of severity [was] hotly disputed)" the plaintiff on the arm with a plastic bat. *Id.* at 1278, 1279. The plaintiff there also argued against using the shocks-the-conscience standard and asked the court instead to use the Fourth Amendment reasonableness standard. *Id.* at 1279-80.

> Plaintiffs attempt to avoid application of the more stringent substantive-due-process test by arguing that the altercation between [the student and the teacher] was not an instance of punishment. Instead, they claim [the teacher] seized [the student] for constitutional purposes, when he hit [the student] on the arm with the plastic bat. Plaintiffs point out that [the teacher] was confronting [the student] for something he allegedly did wrong and was attempting to take him to the Principal's office. That is akin to an investigatory stop by police with a subsequent arrest.

*Id.* at 1280 (quotation marks and citation omitted). In *Gonzales*, the Honorable Bruce Black noted that "[t]he clear weight of authority is contrary to Plaintiffs' contention that the Fourth Amendment should apply in such a situation[,]" *id.* at 1281 (gathering cases), and was "not persuaded by [the] attempt to characterize [the] case as one not involving corporal punishment." *Id.* The *Gonzales* plaintiff had argued that the teacher's use of force should not be classified as corporal punishment in the traditional sense, because it was "spontaneous and immediate, rather than postponed." *Id.* The court disagreed and

found that "[b]y hitting [the student] with the bat, [the teacher] was punishing him just as much as if he had taken him to the principal's office and then hit him." *Id.*

The Court finds this reasoning directly on point. Here, Plaintiff attempts to invent some arbitrary line in the single, continuous incident, labeling part of Defendant Valdez's conduct "disciplinary," and part of it "non-disciplinary." This is a distinction without a difference, and just as in *Gonzales*, "would lead to confusing and inconsistent results . . . . There is no principled reason to treat the two situations differently." *See id.* Thus, the Court will use the above-quoted shocks-the-conscience standard.

### 2.    Plaintiff has established a constitutional violation.

Defendant Valdez argues that there are simply insufficient factual allegations to show that Plaintiff's injury was "so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *See Garcia*, 817 F.2d at 655 (quotation omitted); *see also Doc. 16* at 13. Defendant Valdez points to the inconsistent allegations in Plaintiff's First Amended Complaint – that GVR came home with blood on his clothes, and that he "was diagnosed with a dislocated shoulder '[a] few days after the incident'" rather than at the emergency room when his parents took him to the hospital later on the evening of the incident. *See Doc. 16* at 12-13 (quoting *FAC* ¶ 111). The Court agrees that the factual allegations may also support the theory that Plaintiff was involved in an altercation sometime after the incident with Defendant Valdez. However, the Court is obliged to "accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp.*

*Sec. Litig.*, 776 F.3d at 1108 (quotation omitted). Thus, the Court finds that it is plausible Defendant Valdez punched Plaintiff with such force that he dislocated Plaintiff's shoulder.

The severity of these injuries is central to the shocks-the-conscience standard. If, after discovery, it appears that Defendant Valdez was not responsible for the dislocated shoulder, torn tendons, lingering pain and numbness, decreased mobility, and the sizeable emotional trauma alleged in the First Amended Complaint, then Plaintiff will have a much higher hurdle to clear in order to demonstrate that Defendant Valdez's conduct shocks the conscience. At this stage of the lawsuit, however, the Court finds that Plaintiff's injuries – construed in a light most favorable to Plaintiff – are substantial. "[T]he existence of a substantial injury, or at least the potential for causing such injury, is necessary in substantive-due-process cases, before a violation of the Fourteenth Amendment will be found." *Gonzales*, 222 F. Supp. 2d at 1280.

Accepting Plaintiff's version of the events in his First Amended Complaint as true, as this Court must on a motion to dismiss, Defendant Valdez's alleged use of force would be disproportionate to the need of maintaining order in a class of third grade children, where the only disruption involved a child who put his feet up on a chair. Additionally, "it is possible to infer that [Defendant Valdez] did not" punch Plaintiff three times "in a good faith effort to restore discipline, but simply because he was angry" and, in his own words, "lost it . . . ." *See id.* at 1282; *see also FAC* ¶ 64. A jury could interpret Defendant Valdez's conduct in "losing it" as malice towards the students. Simply put, the Court finds that Plaintiff has succeeded in meeting his burden to allege a viable constitutional violation.

**3.    The right at issue was clearly established at the time of the incident.**

At the second step of the qualified immunity inquiry, the Court must determine "whether the right was so clearly established that a reasonable person would have known that her conduct violated that right." *Harris*, 273 F.3d at 931 (citation omitted). The Tenth Circuit has stated that "[o]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* (quoting *Medina v. City & Cty. of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992)).

The Supreme Court recently

> [r]eiterate[d] the longstanding principle that "clearly established law" should not be defined "at a high level of generality." *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011). As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.*, at 639.

*White v. Pauly*, 137 S. Ct. 548, 552 (2017). Thus, ""the dispositive question is 'whether the violative nature of particular conduct is clearly established,'" and "[the] inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition. . . .'" *Pauly v. White*, 874 F.3d 1197, 1222 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 2650 (2018) (quoting *Mullenix v. Luna*, 136 S. Ct. at 308 (2015) (internal quotations omitted).

Defendant Valdez argues that Plaintiff fails to cite any relevant authority that "would have informed Valdez that his actions, even if as extreme as alleged by Plaintiff,

violated the Substantive Due Process Clause of the Fourteenth Amendment." *Doc. 38* at 8. The Court disagrees. Plaintiff cites to a variety of cases that, together, provide reasonable notice to Defendant Valdez that he could be liable for violating a student's constitutional right to substantive due process if he maliciously used physical force to seriously injure a student.

First, and foremost, Plaintiff cites to the Tenth Circuit's decision in *Garcia v. Miera*, 817 F.2d 650 (10th Cir. 1987). In *Garcia*, a nine-year-old third grader was held upside down by a teacher and received two beatings by the principal with a split wooden paddle. The beatings drew blood and resulted in bruises, a welt and a two-inch scar on her leg, as well as back pain for several weeks. One of the beatings was sufficiently severe that an examining nurse indicated she would have reported the discipline as child abuse.[3] The *Garcia* court "[c]onclud[ed] that grossly excessive corporal punishment may indeed constitute a violation of substantive due process rights under the governing law" and further determined that "the law was established with sufficient clarity at the time of the beating incidents at issue here." *Id.* at 656. As explained by the Tenth Circuit in a later case,

> [i[n *Ingraham v. Wright*, 430 U.S. 651 (1977), the Supreme Court held that "where school authorities, acting under color of state law, deliberately decide[ ] to punish a child for misconduct by restraining the child and inflicting appreciable physical pain," Fourteenth Amendment liberty interests are implicated. In *Garcia v. Miera,* 817 F.2d 650, 654 (10th Cir.1987), *cert. denied*, 485 U.S. 959 (1988), we held that *Ingraham*

---

[3]   Defendant Valdez contends that his criminal guilty pleas to battery based on these events have "no bearing on Plaintiff's claims herein." *Doc. 38* at 5. Yet the filing of the original three counts of criminal child abuse reflects society's assessment of the seriousness of his conduct and the risk of significant injury to a young student. His plea of guilty to the lesser battery charges pursuant to a plea agreement seems inconsistent with a claim that his "actions were obviously related to a pedagogical concern of maintaining a proper educational environment and order in the classroom." *See Doc. 38* at 4.

"clearly signaled that, at some degree of excessiveness or cruelty, the meting out [of] such punishment violates the substantive due process rights of the pupil."

*Maldonado v. Josey*, 975 F.2d 727, 730 (10th Cir. 1992) (citations omitted).

Second, Plaintiff refers to *Gonzales*, a case from this District with facts very similar to those here. The *Gonzales* Court described the case "as one involving a teacher's gratuitous, unprovoked (or at least insufficiently provoked) application of force to a student." *Gonzales*, 222 F. Supp. 2d at 1279. Judge Bruce Black found that the teacher need not have used the force involved, but was merely "angry about being called a 'faggot . . . .'" *Id.* at 1282. He nevertheless found no constitutional violation because "the existence of serious injury or the potential for causing such injury is a major factor in substantive due process cases." *Id.* at 1282. "One hit with a plastic bat on the arm, even a hard smack, simply [did] not have the potential to cause serious harm to an eight-grade student, and did not cause such harm in this case." *Id.*

In the instant case, by contrast, Defendant Valdez's three punches allegedly caused serious physical and emotional harm to the younger Plaintiff. As the Tenth Circuit noted in *Harris*, also cited by Plaintiff, Defendant Valdez's alleged actions can be characterized as "excessive, demeaning, and inhumane" causing Plaintiff "appreciable pain." *Harris*, 273 F.3d at 931. Thus, the extent of force allegedly used against GVR – that being sufficient to dislocate a shoulder and tear tendons – meets the *Gonzales* definition for a constitutional violation. Both the *Garcia* and *Gonzales* cases served to inform a teacher that use of such disproportionate force as that alleged here would violate a child's right to substantive due process.

The Court finds that the weight of authority from other courts also supports this conclusion. For example, Plaintiff cites *Neal ex rel. Neal v. Fulton County Board of Education*, 229 F.3d 1069, 1071 (11th Cir. 2000), wherein a coach hit a student in the face with a weight lock as punishment for the student hitting another student with the weight lock during a fight. As a result, the student lost the use of one eye. *Id.* at 1076. In *P.B. v. Koch*, 96 F.3d 1298, 1299 (9th Cir. 1996), a principal physically assaulted three students: the principal slapped one student "in the face and grabbed his neck[,]" grabbed a second "by the neck and punched him in the chest[,]" and grabbed a third "by the neck and threw him head first into the lockers." The Ninth Circuit found that because the principal "took these actions not in good faith but for the purpose of causing harm[,] . . . the deliberate and intentional harm allegedly inflicted – causing pain, bruising, and emotional injury – is significant."[4] *Id.* at 1304 (citations omitted).

In *Webb v. McCullough*, 828 F.2d 1151, 1153-54 (6th Cir. 1987), a principal investigated a group of students who were rumored to be drinking and misbehaving in a hotel room during a school band trip. The plaintiff had locked herself into a bathroom, and the principal insisted on entering. *Id.* at 1154. When he could not unlock the door, the principal repeatedly slammed the door with his shoulder. *Id.* The door finally opened, knocking the plaintiff into the wall. *Id.* The principal "thrust the door open again, and it struck [the plaintiff] again, throwing her to the floor. [The principal] then grabbed [the student] from the floor, threw her against the wall, and slapped her." *Id.* The Sixth

---

[4] The Ninth Circuit described the "factors to consider in determining whether substantive due process has been violated" as "the need for the governmental action in question, the relationship between the need and the action, the extent of harm inflicted, and whether the action was taken in good faith or for the purpose of causing harm." *P.B.*, 96 F.3d at 1303-04. The Ninth Circuit did not specifically analyze whether the principal's actions shocked the conscience.

Circuit found that rather than being disciplinary, the blows arose from anger or malice and shocked the conscience. *Id.* at 1158.

These cases are sufficient to have put a reasonable person in Defendant Valdez's position on notice that even in an arguably disciplinary context, the application of intentional, excessive physical force against a student with resulting severe and continuing injuries, could rise to the level of a constitutional violation. The Court will deny Defendant Valdez's motion.

### B. The Court will dismiss Plaintiff's § 1983 claim against EPSD.

In Count II, Plaintiff brings a claim against EPSD pursuant to 42 U.S.C. § 1983 for violations of his substantive due process right to bodily integrity. *See FAC* ¶¶ 132-37. Plaintiff vaguely asserts that EPSD's "actions and deliberate omissions . . . were the result of a custom or policy which permitted or condoned . . . Defendant Valdez'[s] physical, mental, and emotional abuse of Plaintiff . . . ." *Id.* ¶ 136. More specifically, Plaintiff alleges that EPSD "failed to adequately screen Defendant Valdez prior to his licensing and employment, . . . failed to take necessary actions with respect to his licensure and employment during his tenure as a teacher, . . . [and] failed to adequately train and supervise Defendant Valdez during his tenure as a teacher . . . ." *FAC* ¶ 134.

Thus, it appears that Plaintiff is proceeding against EPSD on two theories: first, that EPSD was deliberately indifferent to a widespread pattern of unconstitutional misconduct by teachers against students; and second, that EPSD failed to adequately screen, train, supervise, and "take necessary actions with respect to [Defendant Valdez's] licensure and employment," resulting in Plaintiff's injuries. Again, to determine

if there is a viable claim, the Court looks to the factual allegations of the First Amended Complaint and assumes them to be true in the light most favorable to the non-movant.

### 1. Plaintiff has not alleged facts sufficient to show that EPSD was deliberately indifferent to a widespread pattern of unconstitutional misconduct.

"In order to hold [EPSD] liable in this 1983 suit, the plaintiff must establish the existence of a policy adopted by the board or the existence and maintenance of a board custom or failure to" adequately screen potential teachers, train and supervise teachers, or otherwise take necessary actions with respect to teachers' licensure and employment. *Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cty., Kan.*, 996 F.2d 1035, 1041 (10th Cir. 1993).

> To establish a case based on custom, a plaintiff must prove:
>
> (1) The existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the school district's employees;
>
> (2) Deliberate indifference to or tacit approval of such misconduct by the school district's policymaking officials (board) after notice to the officials of that particular misconduct; and
>
> (3) That the plaintiff was injured by virtue of the unconstitutional acts pursuant to the board's custom and that the custom was the moving force behind the unconstitutional acts.

*Id.* Plaintiff makes various allegations in his First Amended Complaint regarding EPSD, but he fails to sufficiently demonstrate that his § 1983 claim against EPSD is plausible.

Plaintiff has alleged the following instances of misconduct by EPSD employees: (1) Mr. Montoya, an EPSD teacher, sexually assaulted nine students for which he pleaded no contest to eight counts of battery in 2014 (*id.* ¶¶ 37, 39); (2) unidentified teachers "behav[ed] angrily towards their students by getting in their faces and

screaming at them" (*id.* ¶ 43); (3) "Defendant Valdez physically battered a female student at Sombrillo Elementary School in 2014" (*id.* ¶ 33); (4) Defendant Valdez pulled up Plaintiff's underwear about a month prior to the November 18, 2015 incident (*id.* ¶ 34); and (5) Defendant Valdez physically battered three students on November 18, 2015 (*id.* ¶¶ 47-56).[5] *See also Doc. 15* at 6. The School Defendants do not specifically argue that these instances of misconduct do not meet the first prong, thus, the Court will assume for purposes of this motion that Plaintiff has sufficiently alleged "a continuing, persistent and widespread practice of unconstitutional misconduct by [EPSD's] employees." *See Gates*, 996 F.2d at 1041.

Even assuming that Plaintiff's complaint alleges a widespread pattern of misconduct, Plaintiff fails to make factual allegations sufficient to show that EPSD knew of the misconduct and was deliberately indifferent to or tacitly approved of it. Plaintiff makes very few allegations regarding what actual notice EPSD had about the teachers' alleged misconduct towards students. Plaintiff includes no allegations regarding what notice EPSD had about Mr. Montoya's misconduct – Plaintiff simply states that he pleaded no contest to eight counts of battery. *FAC* ¶¶ 37-40. Plaintiff alleges that "one of the students disclosed an instance of inappropriate contact" by Mr. Montoya to another teacher, but the teacher "did not report it" and no allegation that EPSD otherwise knew. *Id.* ¶ 38. Likewise, Plaintiff makes no allegations that EPSD was aware of the unidentified teachers who screamed at students, Defendant Valdez physically

---

[5] Plaintiff makes other allegations regarding Defendant Valdez, but they did not occur in his capacity as a teacher with EPSD. *See FAC* ¶¶ 12-30.

battering a female student in 2014, or Defendant Valdez pulling up Plaintiff's underwear in 2015.

The only incident of which EPSD clearly had notice is the incident at issue here.[6] Rather than being deliberately indifferent to or tacitly approving of Defendant Valdez's misconduct, EPSD terminated his employment five days later – on November 23, 2015. *Id.* ¶ 89. *See Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1125 (10th Cir. 2008) (noting that where the school district "was aware of several discrete problems and was working to remedy them[,]" that was "an issue of the district's negligence, not its deliberate indifference[;]" thus, "[t]he attempted remedial measures suggest the district was not deliberately indifferent to or tacitly approving of the misconduct"). Because Plaintiff's allegations fail to show that EPSD was deliberately indifferent to or tacitly approved of a widespread pattern of unconstitutional misconduct, he is unable to maintain his § 1983 claim against EPSD based on custom.

**2.  Plaintiff has not alleged facts sufficient to show that any failure on the part of EPSD to adequately screen, train, or otherwise supervise Defendant Valdez is actionable under § 1983.**

Plaintiff also brings a claim for municipal liability on the basis that EPSD "failed to adequately screen Defendant Valdez prior to his licensing and employment, . . . failed to take necessary actions with respect to his licensure and employment during his tenure as a teacher, . . . [and] failed to adequately train and supervise Defendant Valdez during

---

[6] Plaintiff does not specifically assert that Defendant Engler qualifies as a "policymaking official" under the second prong. *See FAC*; *Doc. 15*. Even if he did argue that Defendant Engler was a policymaking official, there are insufficient factual allegations to show that Defendant Engler had actual notice of any instance of misconduct (other than the November 18, 2015 incident) and was either deliberately indifferent to or tacitly approved of the misconduct.

his tenure as a teacher . . . ." *FAC* ¶ 134. The Court turns first to Plaintiff's contention that EPSD failed to adequately screen Defendant Valdez.

Municipal liability under § 1983 may arise for a failure to adequately screen a potential employee where a plaintiff "demonstrate[s] that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 411 (1997). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citing *Brown*, 520 U.S. at 407). "In most instances, notice can be established by proving the existence of a pattern of tortious conduct." *Id.* (citing *Brown*, 520 U.S. at 409-10). "In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction . . . ." *Id.* at 1307-08 (citing *Brown*, 520 U.S. at 409; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 & n.10 (1989)).

Plaintiff contends that EPSD was deliberately indifferent to Defendant Valdez's history of criminal complaints, most of which revolve around criminal sexual contact. Plaintiff attempts to show a "pattern" by EPSD, as it also hired Mr. Montoya "despite numerous prior allegations of sexual abuse or sexual harassment of students by him in [other school districts], which resulted in the one-year suspension of his license in 1999." *FAC* ¶ 40. The problem with Plaintiff's argument is that Defendant Valdez's

background is relevant to sexual misconduct, yet the constitutional violation alleged here had nothing to do with sexual misconduct – it was a non-sexual physical battery. Thus, the two instances Plaintiff points to are not sufficient to show a "pattern," and Plaintiff must allege facts to demonstrate that "that *this* [teacher] was highly likely to inflict the *particular* injury suffered by the plaintiff." *Brown*, 520 U.S. at 412 (emphasis in original). "The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id.* Plaintiff must show that Defendant Valdez's background made his unconstitutional misconduct – punching and screaming at Plaintiff – "a plainly obvious consequence of the hiring decision." *Id.* Plaintiff has simply not alleged facts sufficient to make this connection; thus, he cannot maintain a § 1983 claim under this theory.

Plaintiff also contends that EPSD failed to adequately train, supervise, or "take necessary actions with respect to [Defendant Valdez's] licensure and employment" while he taught at Sombrillo Elementary. *See FAC* ¶ 134. Plaintiff makes no attempt to define what "necessary actions" EPSD failed to take regarding Defendant Valdez's licensure or employment. Consequently, Plaintiff may not maintain a § 1983 claim under that theory.

Plaintiff's theory that EPSD did not adequately train or supervise Defendant Valdez fails for similar reasons. "[M]unicipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (quoting *City of Canton*, 489 U.S. at 388-91). Plaintiff only vaguely asserts that EPSD failed to train or supervise

Defendant Valdez. It is unclear what training EPSD failed to provide, and the Court declines to speculate on this point. It is also unclear how EPSD failed to supervise Defendant Valdez. While Plaintiff asserts that Defendant Valdez physically battered a female student in 2014 and pulled up Plaintiff's underwear in 2015, Plaintiff makes no allegations that Defendant Valdez was allowed to commit these acts due to any failure on EPSD's fault to supervise him. And because Plaintiff has not made any allegations to show that EPSD had notice of these incidents, Plaintiff cannot show that EPSD's failure to train or supervise "reflect[ed] a 'deliberate'' or 'conscious' choice" on EPSD's part to disregard the risk of harm Defendant Valdez may have posed. *Barney*, 143 F.3d at 1307 (quoting *City of Canton*, 489 U.S. at 389). Plaintiff has simply not made any specific allegations to support his § 1983 claim that EPSD failed to adequately train or supervise.

Because Plaintiff has failed to allege facts to state a plausible claim for relief under § 1983 against EPSD, the Court will grant Defendant's motion to dismiss on Count II.

**C.    The Court will deny Plaintiff's motion to dismiss pursuant to Rule 41 and grant Defendants' motion to dismiss Counts III and IV.**

In Count III, Plaintiff asserts a claim against Defendant Engler in his individual capacity for violating his Fourteenth Amendment right to substantive due process under 42 U.S.C. § 1983. *FAC* ¶¶ 138-48. In Count IV, Plaintiff asserts a claim against EPSD under Title IX, 20 U.S.C. §§ 1681-88. *Id.* ¶¶ 149-62. In his Response to the School Defendants' motion to dismiss, Plaintiff apparently acknowledges that he fails to assert facts sufficient to maintain his claims for relief in Counts III and IV, as he volunteers to

dismiss both without prejudice. *See Doc. 15* at 2. Indeed, Plaintiff then filed an Opposed

Motion to Dismiss Counts III and IV without prejudice pursuant to Federal Rule of Civil

Procedure 41(a)(1)(A)(i). *Doc. 33*.

Even overlooking the admitted procedural deficiencies of Plaintiff's motion, the

motion to dismiss these two claims lacks merit.

> Rule 41(a) refers to dismissing "an action," and not to dismissing individual
> claims or causes of action. . . . An "action," however, for rule 41(a)'s
> purposes, refers, not to all the claims against all defendants in the case,
> but to all the claims asserted against a single defendant. . . . "Rule 41(a)
> may not be employed to dismiss fewer than all of the claims against any
> particular defendant."

*Pedroza v. Lomas Auto Mall, Inc.,* 304 F.R.D. 307, 322 (D.N.M. 2014) (quoting 8 James

Wm. Moore et al., Moore's Federal Practice § 41.21[1] (3d ed. 2012); *see also Gobbo*

*Farms & Orchards v. Poole Chem. Co.*, 81 F.3d 122, 123 (10th Cir. 1996) (finding no

authority "to support [a] contention that Rule 41(a) applies to dismissal of less than all

claims in an action.").  Because Plaintiff did not seek to dismiss all of his claims against

Defendant Engler or all his claims against Defendant EPSD, voluntary dismissal

pursuant to Rule 41(a) is not permitted.

Nevertheless, the Court agrees that for the reasons set forth in the School

Defendants' Motion to Dismiss, the factual allegations of the First Amended Complaint

fail to state a viable Section 1983 claim against Defendant Engler. Thus, he is entitled to

qualified immunity from suit. Similarly, Count IV of the First Amended Complaint fails to

make sufficient factual allegations to support a finding of a Title IX sex discrimination

claim against Defendant EPSD. Therefore, the Court will dismiss both Counts III and IV

with prejudice.

**D.     The Court will not dismiss Count V – Plaintiff's claims against the School Defendants under the NMTCA.**

In Count V, Plaintiff asserts a claim against Defendants EPSD and Engler for violating his rights under the NMTCA. *See FAC* ¶¶ 163-78. Specifically, Plaintiff alleges that the School Defendants had a duty under N.M. Stat. Ann. § 41-4-6 "to exercise reasonable care in the maintenance and operation of Sombrillo Elementary" and failed to maintain the facility in a safe condition. *Id.* ¶¶ 166-67, 173. Section 41-4-6 waives immunity "for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." N.M. Stat. Ann. § 41-4-6(A).

Plaintiff expressly alleges that the School Defendants violated § 41-4-6 by "repeatedly ignor[ing] the warning signs and the readily observable inappropriate behavior of Defendant Valdez toward students, including [Plaintiff], as well as [by] ignor[ing] Defendant Valdez'[s] criminal history." *Id.* ¶ 173. Plaintiff further asserts that EPSD "breached its duties of care by failing to properly screen, hire, train, monitor, supervise and discipline employees of Sombrillo Elementary School, such as Defendant Valdez, as well as by failing to enact or enforce appropriate policies, procedures and protocols concerning safety in student-teacher interactions, and by" failing to take appropriate "supervisory actions to correct the potential problems and prevent the harm and injuries incurred by Plaintiff . . . ." *Id.* ¶ 176.

"The NMTCA is based on traditional tort concepts of duty and a reasonably prudent person's standard of care while performing that duty." *C.H. v. Los Lunas Sch.*

*Bd. of Educ.*, 852 F. Supp. 2d 1344, 1351 (D.N.M. 2012) (citing N.M. Stat. Ann. 1978, § 41-4-2(B)). To recover under § 41-4-6, a plaintiff must show that the defendant's "negligent operation or maintenance [has] create[d] a dangerous condition that threatens the general public or a class of building users . . . ." *Id.* (citation omitted). A finding of negligent supervision alone will not suffice because it is well-established law that the NMCTA contains no waiver of liability for negligent supervision. *See Pemberton v. Cordova*, 734 P.2d 254, 256 (N.M. Ct. App. 1987); *see also Doe v. Albuquerque Pub. Schs.,* 2018 WL 2422013, at *7 (wherein Chief Judge William P. Johnson observes, "Claims of negligent supervision do not trigger a waiver of liability under the New Mexico Tort Claims Act.").

The School Defendants contend that Plaintiff fails to assert sufficiently specific factual allegations to show "what actions or inactions Defendants EPSD or Engler committed to personally injure Plaintiff." *Doc. 6* at 19. Moreover, the School Defendants contend that Plaintiff must allege specific facts showing they had actual notice of inappropriate conduct with students by Defendant Valdez. *Id.*

Plaintiff disputes that "actual notice" is required. In his Response, Plaintiff correctly cites to *Castillo v. Santa Fe County*, 107 N.M. 204, 207 (1988) for the following proposition: the School Defendants are liable if they were "plainly aware or *should have been aware* of the continuing problem" the district has with student abuse, specifically at the hands of educators with demonstrated histories of abusive behavior. *See Doc. 15* at 15 (emphasis added); *see also C.H.*, 852 F. Supp. 2d at 1361 (to state a claim under § 41-4-6, a plaintiff "need not assert that the Defendants knew that a dangerous

condition existed[,] . . . [i]t is sufficient that [plaintiff] alleged that Defendants should have foreseen that the [condition] would pose a danger to" a class of building users).

As the Court noted above, however, Plaintiff fails to include specific factual allegations to demonstrate that either of the School Defendants knew or should have known that Defendant Valdez was prone to physically abusing his students. There are no allegations to show that either Defendant had notice of Defendant Valdez's previous conduct towards students (physically battering a female student in 2014 or pulling up Plaintiff's underwear in 2015), and no allegations to show that they knew or should have known he was going to batter Plaintiff that day.

The First Amended Complaint does allege, however, that Defendants knew or should have known about Defendant Valdez's criminal history including assaultive conduct towards non-students. *FAC* ¶ 141. In the context of Plaintiff's Section 1983 claim above, the Court found that there must be a "<u>strong</u>" connection "between the background of the particular applicant and the specific constitutional violation alleged . . . ." *See Brown*, 520 U.S. at 412. But under the NMTCA, the standard is lower – the dangerous condition must only make the danger foreseeable. *See Callaway v. N.M. Dep't of Corr.*, 875 P.2d 393, 399 (N.M. Ct. App. 1994) (noting that state actors may be liable for a dangerous condition where the state actors "knew or should have known of the danger and that the danger was foreseeable") (citation omitted).

Defendants argue that Defendant Valdez's past criminal history cannot provide "notice" of dangerousness because the misconduct alleged here is not sexual in nature. *See Doc. 6* at 20 n.9. The Court disagrees and finds that this is a question of fact. If either Defendant knew or should have known about Defendant Valdez's criminal history,

which includes allegations of both unlawful contact with a minor and physical (albeit sexually related) battery of adults, it is possible that a jury could find that the Defendants had a duty to protect Sombrillo Elementary students from a potentially unsafe condition and that the danger to students was foreseeable. *See Callaway*, 875 P.2d at 399 (finding that immunity was waived under § 41-4-6 where a prison negligently allowed "known and dangerous gang members loose to victimize the general prison population").

To be clear, Defendant Engler cannot be found vicariously liable under § 41-4-6 for Defendant Valdez's actions. *See Silva v. New Mexico*, 745 P.2d 380, 386 (N.M. 1987) (while an individual defendant "may be liable for negligent performance of a duty, he is not subject to liability because of the negligent act or omission of some other employee, merely because of his executive position") (citation omitted). Insofar as Defendant Engler's responsibilities included monitoring staff or creating and enforcing safety policies that would have kept Plaintiff safe, he may be liable if he failed to perform those responsibilities. *See id.*; *see also C.H.*, 852 F. Supp. 2d at 1358 (finding that the NMTCA applied to individual defendants where the plaintiff alleged that the defendants acted within "the scope of their duties as school employees[,] . . . had a duty to exercise reasonable care" under § 41-4-6, the duty was owed to plaintiff, and the defendants breached the duty); *Upton v. Clovis Mun. Sch. Dist.*, 141 P.3d 1259, 1262 (N.M. 2006) (finding that a school district's "failure to follow procedures established for at-risk students appears to fall comfortably within the Section 41-4-6 waiver for 'operation or maintenance' of a public building"). Thus, at this stage of the litigation, the Court finds

Plaintiff's allegations sufficient for survival of the NMTCA claim in the context of this motion to dismiss.

### E. The Court will deny Plaintiff's requests for limited discovery, to convert the motion to dismiss into one for summary judgment, and to amend his complaint.

Plaintiff includes three requests in his Response to Defendants' motion to dismiss. First, Plaintiff asks "for an order to convert[ ] the Motion to Dismiss into a motion for summary judgment and to allow Plaintiff to conduct . . . limited discovery . . . ." *Doc. 15* at 15-16. Plaintiff premises this motion on Rules 12(d) and 56(d), neither of which provide an appropriate vehicle for plaintiff's request. The Court did not consider any matters outside of the pleading in deciding the School Defendants' motion, which was properly styled as a motion to dismiss. The Court finds no reason to convert it to a summary judgment motion or permit limited discovery.

Second, Plaintiff seeks permission to amend his complaint. Plaintiff, however, does not comply with this Court's local rules, which provide that "[a] proposed amendment to a pleading must accompany the motion to amend." D.N.M. LR-Civ. 15.1. The Court therefore will deny Plaintiff's request. If Plaintiff wishes to file an amended complaint, he must file a motion that conforms to Federal Rule of Civil Procedure 15 and our Local Rules.

## IV. Conclusion

Plaintiff's Motion and Requests: The Court denies Plaintiff's Opposed Motion to Dismiss Counts III and IV pursuant to Rule 41(a) of the Federal Rules of Civil Procedure. The Court also denies Plaintiff's requests for discovery, to convert the motion to dismiss into one for summary judgment, and to amend his complaint.

Count I: Plaintiff's factual allegations are sufficient to overcome Defendant Valdez's qualified immunity defense under § 1983, and the Court denies Defendant Valdez's motion to dismiss.

Count II: Because Plaintiff fails to make factual allegations sufficient to maintain his § 1983 claim against EPSD, Count II will be dismissed with prejudice.

Counts III: Because Plaintiff's allegations fail to state a § 1983 claim against Defendant Engler such that he is entitled to qualified immunity, Count III will be dismissed with prejudice.

Count IV: Because Plaintiff's allegations fail to state a viable Title IX claim against Defendant EPSD, Count III will be dismissed with prejudice.

Count V: Because Plaintiff's allegations are sufficient to withstand the School Defendants' motion to dismiss his NMTCA claim pursuant to § 41-4-6, the Court denies the Defendants' motion to dismiss as to Count V.

Wherefore,

**IT IS HEREBY ORDERED** as follows: Plaintiff's Opposed Motion to Dismiss Counts III and IV *(Doc. 33)* is **denied;** Defendant Andrew Valdez's Motion to Dismiss and for Qualified Immunity (*Doc. 16*) is **denied**; and Defendants Board of Education of the Española Public School District and Peter Engler's Motion to Dismiss and for Qualified Immunity  *(Doc. 6)* is **granted in part** and **denied in part** as described above.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent